| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Law Offices of Lee Linson<br>Lee Linson (SBN: 57632)<br>11901 Santa Monica Blvd., Suite 449<br>Los Angeles, CA 90025<br>310-591-4004<br>linsonlawyer@gmail.com | |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| List all names (including trade names) used by the debtor within the last 8 years:<br><br>Manuel Raymond Lima | CASE NO.: 2:16-bk-16533-NB<br>CHAPTER SELECT CHAPTER |
|---|---|
| | **CHAPTER 13 PLAN** |
| | **CREDITOR'S MEETING:**<br>DATE: 06/24/2016<br>TIME: 10:00 AM<br>PLACE: Rm1, 915 Wilshire Blvd., 10th Floor<br>Los Angeles, CA 90017<br><br>**CONFIRMATION HEARING:**<br>DATE: 07/28/2016<br>TIME: 9:30 AM<br>PLACE: Courtroom 1545, 255 E. Temple Street, 15th Floor<br>Los Angeles, CA 90012 |
| Debtor(s). | |

**NOTICE**

This Chapter 13 Plan is proposed by the above Debtor. The Debtor attests that the information stated in this Plan is accurate. Creditors cannot vote on this Plan. However, creditors may object to this Plan being confirmed pursuant to 11 U.S.C. §1324. Any objection must be in writing and must be filed with the court and served upon the Debtor, Debtor's attorney (if any), and the chapter 13 trustee not less than 7 days before the date set for the meeting of creditors. Unless an objection is filed and served, the court may confirm this Plan. The Plan, if confirmed, modifies the rights and duties of

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                             Page 1                             F 3015-1.01.CHAPTER13.PLAN

PAGE 1 OF 8

the Debtor and creditors to the treatment provided in the Plan as confirmed, with the following IMPORTANT EXCEPTIONS:

Unless otherwise provided by law, each creditor will retain its lien until the earlier of payment of the underlying debt determined under non-bankruptcy law or discharge under 11 U.S.C. §1328. If the case under this chapter is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law.

Defaults will be cured using the interest rate set forth below in the Plan. Any ongoing obligation will be paid according to the terms of the Plan.

**HOLDERS OF SECURED CLAIMS AND CLASS 1 CLAIMANTS WILL BE PAID ACCORDING TO THIS PLAN AFTER CONFIRMATION UNLESS THE SECURED CREDITOR OR CLASS 1 CLAIMANT FILES A PROOF OF CLAIM IN A DIFFERENT AMOUNT THAN THAT PROVIDED IN THE PLAN.** If a secured creditor or a class 1 creditor files a proof of claim, that creditor will be paid according to that creditor's proof of claim, unless the court orders otherwise.

**HOLDERS OF ALL OTHER CLAIMS MUST TIMELY FILE PROOFS OF CLAIMS, IF THE CODE SO REQUIRES, OR THEY WILL NOT BE PAID ANY AMOUNT.** A Debtor who confirms a Plan may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. §1328.

The Debtor proposes the following Plan and makes the following declarations:

## I. PROPERTY AND FUTURE EARNINGS OR INCOME SUBJECT TO THE SUPERVISION AND CONTROL OF THE CHAPTER 13 TRUSTEE

The Debtor submits the following to the supervision and control of the chapter 13 trustee:

A. Payments by Debtor of $ __1,017.50__ per month for __60__ months. This monthly Plan Payment will begin within 30 days of the date the petition was filed.

B. The base plan amount is $ __55,000.00__ which is estimated to pay __100__ % of the allowed claims of nonpriority unsecured creditors. If that percentage is less than 100%, the Debtor will pay the Plan Payment stated in this Plan for the full term of the Plan or until the base plan amount is paid in full, and the chapter 13 trustee may increase the percentage to be paid to creditors accordingly.

C. Amounts necessary for the payment of postpetition claims allowed under 11 U.S.C. §1305.

D. Preconfirmation adequate protection payments for any creditor who holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in the Plan. Preconfirmation adequate protection payments and preconfirmation lease payments will be paid to the chapter 13 trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |

Each adequate protection payment or preconfirmation lease payment will commence on or before the 30th day from the date of filing of the case. The chapter 13 trustee shall deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from the Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured(s) creditor(s) at the next available disbursement or as soon as practicable after the payment is received and posted to the chapter 13 trustee's account. The chapter 13 trustee will take his or her statutory fee on all disbursements made for preconfirmation adequate protection payments or preconfirmation lease payments.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                Page 2                        F 3015-1.01.CHAPTER13.PLAN

EXHIBIT A
PAGE 2 OF 8

E.  Other property (*specify property or indicate none*): _____

_____

II. **ORDER OF PAYMENTS; CLASSIFICATION AND TREATMENT OF CLAIMS:**
Except as otherwise provided in the Plan or by court order, the chapter 13 trustee shall disburse all available funds for the payment of claims as follows:

A. ORDER OF PAYMENTS:

1. If there are Domestic Support Obligations, the order of priority shall be:

   (a) Domestic Support Obligations and the chapter 13 trustee's fee not exceeding the amount accrued on payments made to date;

   (b) Administrative expenses (Class 1(a)) in amount not exceeding _____% of each Plan Payment until paid in full;

2. If there are no Domestic Support Obligations, the order of priority shall be the chapter 13 trustee's fee not exceeding the amount accrued on payments made to date, and administrative expenses (Class 1(a)) in an amount not exceeding _____% of each Plan Payment until paid in full.

3. Notwithstanding 1 and 2 above, ongoing payments on secured debts that are to be made by the chapter 13 trustee from the Plan Payment; such secured debt may be paid by the chapter 13 trustee commencing with the inception of Plan Payments.

4. Subject to 1, 2, and 3 above, pro rata to all other claims except as otherwise provided in the Plan.

5. No payment shall be made on nonpriority unsecured claims until all secured and priority claims have been paid in full.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 3                          F 3015-1.01.CHAPTER13.PLAN

PAGE 3 OF 8

B. CLASSIFICATION AND TREATMENT OF CLAIMS:

| CLASS 1 |||||||
|---|---|---|---|---|---|
| ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507 ||||||
| The Debtor will pay Class 1 claims in full; except the debtor may provide for less than full payment of Domestic Support Obligations pursuant to 11 U.S.C. §1322(a)(4). ||||||
| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| a. Administrative Expenses ||||||
| (1) Chapter 13 trustee's fee – estimated at 11% of all payments to be made to all classes through this Plan. ||||||
| (2) Attorney's fees | $ 2,000 |  | $ 1,000 | 2 | $ 2,000 |
| (3) Chapter 7 trustee's fees (*specify trustee name*) | $ |  | $ |  | $ |
| (4) Other | $ |  | $ |  | $ |
| b. Other Priority Claims ||||||
| (1) Internal Revenue Service | $ | % | $ |  | $ |
| (2) Franchise Tax Board | $ | % | $ |  | $ |
| (3) Domestic Support Obligation | $ | % | $ |  | $ |
| (4) Other | $ | % | $ |  | $ |
| c. Domestic Support Obligations that are not to be paid in full in the Plan (*specify creditor name*): ||||||
|  | $ | % | $ |  | $ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012        Page 4        F 3015-1.01.CHAPTER13.PLAN

PAGE 4 OF 8

| | CLASS 2 |
|---|---|

**CLAIMS SECURED SOLELY BY PROPERTY THAT IS THE DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES AFTER THE FINAL PLAN PAYMENT IS DUE**

1. ☐ The postconfirmation monthly mortgage payment will be made by the chapter 13 trustee from the Plan Payment to: _____

2. ☐ The postconfirmation monthly mortgage payment will be made by the Debtor directly to: _____

| Capital One | 8185 |
|---|---|
| (name of creditor) | (last 4 digits of account number) |
| | |
| (name of creditor) | (last 4 digits of account number) |

**The Debtor will cure all prepetition arrearages for the primary residence through the Plan Payment as set forth below.**

| Name of Creditor | Last 4 Digits of Account Number | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| Capital One | 8185 | $ 54,000 | 0 % | $ 1,017.50 | 58 | $ 54,000 |
| | | $ | % | $ | | $ |

| | CLASS 3 |
|---|---|

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE PAID IN FULL DURING THE TERM OF THE PLAN**

| Name of Creditor | Last 4 Digits of Account Number | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | Equal Monthly Payment | NUMBER OF MONTHS | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|
| | | $ | $ | % | $ | | $ |
| | | $ | $ | % | $ | | $ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012    Page 5    F 3015-1.01.CHAPTER13.PLAN

EXHIBIT A
PAGE 5 OF 8

| | CLASS 4 | |
|---|---|---|
| | **OTHER SECURED CLAIMS ON WHICH THE LAST PAYMENT IS DUE AFTER THE DATE ON WHICH THE FINAL PAYMENT UNDER THE PLAN IS DUE** | |

1. ☐ The postconfirmation monthly payment pursuant to the promissory note will be made by the chapter 13 trustee from the Plan Payment to:
2. ☐ The postconfirmation monthly payment pursuant to the promissory note will be made by the Debtor directly to:

_____                                  _____
(name of creditor)                                                            (last 4 digits of account number)

_____                                  _____
(name of creditor)                                                            (last 4 digits of account number)

The Debtor will cure all prepetition arrearages on these claims through the Plan Payment as set forth below.

| Name of Creditor | Last 4 Digits of Account Number | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| | | $ | % | $ | | $ |
| | | $ | % | $ | | $ |

| CLASS 5 |
|---|
| **NON-PRIORITY UNSECURED CLAIMS** |

The Debtor estimates that non-priority unsecured claims total the sum of $_____0_____.

Class 5 claims will be paid as follows:

(Check one box only.)
☐ Class 5 claims (including allowed unsecured amounts from Class 3) are of one class and will be paid pro rata.

OR

☐ Class 5 claims will be divided into subclasses as shown on the attached exhibit (which also shows the justification for the differentiation among the subclasses) and the creditors in each subclass will be paid pro rata.

### III. COMPARISON WITH CHAPTER 7

The value as of the effective date of the Plan of property to be distributed under the Plan on account of each allowed claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. The amount distributed to nonpriority unsecured creditors in chapter 7 would be $___0___ which is estimated to pay ___100___% of the scheduled nonpriority unsecured debt.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                       Page 6                                       F 3015-1.01.CHAPTER13.PLAN

## IV. PLAN ANALYSIS

| TOTAL PAYMENTS PROVIDED FOR UNDER THE PLAN | |
|---|---|
| CLASS 1a | $ 1,000 |
| CLASS 1b | $ |
| CLASS 1c | $ |
| CLASS 2 | $ 54,000 |
| CLASS 3 | $ |
| CLASS 4 | $ |
| CLASS 5 | $ |
| SUB-TOTAL | $ 55,000 |
| CHAPTER 13 TRUSTEE'S FEE (Estimated 11% unless advised otherwise) | $ 6,050 |
| TOTAL PAYMENT | $ 61,050 |

## V. OTHER PROVISIONS

A. The Debtor rejects the following executory contracts and unexpired leases.
   None

B. The Debtor assumes the executory contracts or unexpired leases set forth in this section. As to each contract or lease assumed, any defaults therein and Debtor's proposal for cure of said default(s) is described in Class 4 of this Plan. The Debtor has a leasehold interest in personal property and will make all post-petition payments directly to the lessor(s):
   None

C. In addition to the payments specified in Class 2 and Class 4, the Debtor will make regular payments, including any preconfirmation payments, directly to the following:
   None

D. The Debtor hereby surrenders the following personal or real property (*identify property and creditor to which it is surrendered):* None

E. The Debtor shall incur no debt greater than $500.00 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

F. Miscellaneous provisions (*use attachment, if necessary*):

G. The chapter 13 trustee is authorized to disburse funds after the date confirmation is announced in open court.

H. The Debtor will pay timely all postconfirmation tax liabilities directly to the appropriate taxing authorities as they come due.

I. The Debtor will pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012    Page 7    F 3015-1.01.CHAPTER13.PLAN

PAGE 7 OF 8

## VI. REVESTING OF PROPERTY

Property of the estate shall not revest in the Debtor until such time as a discharge is granted or the case is dismissed or closed without discharge. Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law. After confirmation of the Plan, the chapter 13 trustee shall have no further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Prior to any discharge or dismissal, the Debtor must seek approval of the court to purchase, sell, or refinance real property.

Date: 06/01/2016

/S/ Lee Linson
Attorney for Debtor

/S/ Manuel Raymond Lima
Debtor

_____
Joint Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                               Page 8                               F 3015-1.01.CHAPTER13.PLAN

EXHIBIT ____
PAGE  8  OF  8

Fill in this information to identify the case:

Debtor 1    MANUEL LIMA

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   CENTRAL   District of   CALIFORNIA
                                                             (State)

Case number   16-16533

Official Form 410
# Proof of Claim
04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | Santander Consumer USA Inc.; as Assignee for GE <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Santander Consumer USA Inc.; as Assignee for GE <br> Name <br><br> P.O. Box 961245 <br> Number    Street <br><br> Fort Worth, TX 76161-1245 <br> City    State    ZIP Code <br><br> Contact phone (888) 437-4846 <br><br> Contact email BK_POCTeam@santanderconsumerusa.com | **Where should payments to the creditor be sent?** (if different) <br><br> Santander Consumer USA Inc.; as Assignee for GE <br> Name <br><br> P.O. Box 560284 <br> Number    Street <br><br> Dallas, TX 75356 <br> City    State    ZIP Code <br><br> Contact phone (888) 437-4846 <br><br> Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _____ | |
| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____      Filed on _____ <br>                                                                          MM / DD / YYYY | |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ | |

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>9846</u> |
| 7. | How much is the claim? | <u>$46,269.08</u>    Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br><u>Money Loaned</u> |
| 9. | Is all or part of the claim secured? | ☐ No<br>☑ Yes.    The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☑ Motor vehicle<br>☐ Other. Describe: <u>2007 SEA RAY 220SDT</u><br><br>**Basis for perfection:** <u>Certificate of Title</u><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                       $22,450.00<br>Amount of the claim that is secured:       $22,450.00<br>Amount of the claim that is unsecured:     $23,819.08    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ 7,545.84<br><br>**Annual Interest Rate** (when case was filed) <u>8.50%</u><br>☑ Fixed<br>☐ Variable |
| 10. | Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____ |
| 11. | Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: $_____ |

255

Official Form 410                                        Proof of Claim                                        Page 2

EXHIBIT <u>B</u>
PAGE <u>2</u> OF <u>12</u>

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No <br> ☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  06/16/2016
                 MM / DD / YYYY

/s/ Francesca Johnson
Signature

**Print the name of the person who is completing and signing this claim:**

Name         Francesca Johnson
             First name    Middle name    Last name

Title        Bankruptcy Specialist

Company      Santander Consumer USA Inc.; as Assignee for GE
             Identify the corporate servicer as the company if the authorized agent is a servicer.

Address      _____
             Number    Street

             _____
             City              State    Zip Code

Contact phone _____    Email _____

Official Form 410             Proof of Claim                            256
                                                                        Page 3


EXHIBIT B
PAGE 3 OF 12



**CONSUMER**

Case Number: 16-16533
Filer(s) Name:
MANUEL LIMA

Account No: 9846
Original Claim #:

## Payoff Itemization

**Filing Date:** 5/18/2016

| | |
|---|---:|
| Total Principal: | $44,420.52 |
| Total Interest: | $1,758.56 |
| Total Extension Fees: | $0.00 |
| Total Late Fees: | $0.00 |
| Total NSF Fees: | $0.00 |
| Total Legal Fees: | $0.00 |
| Total Repo Fees: | $90.00 |
| **Payoff** | **$46,269.08** |

©2008 Santander Consumer USA Inc. // P.O.Box 562088 // Dallas, TX 75247

EXHIBIT B
PAGE 4 OF 12

| RETAIL INSTALLMENT CONTRACT ☒ SECURITY AGREEMENT (Check if Sale is Secured) No. | Seller NEWPORT BOATS 4695 ADMIRALTY WAY MARINA DEL REY CA 90292 "We" and "us" mean the Seller above, its successors and assigns | Buyer MANUEL R. A 21550 CHATSWORTH ST CHATSWORTH CA 91311 "You" and "your" mean each Buyer above, and guarantor, jointly and individually |
|---|---|---|

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the goods (Goods) and services described below. The Goods are sold in their present condition, together with the usual accessories and attachments

| Description of Goods or Services Purchased | Serial or Unit No | Motor or Cabinet No | Price of Each Unit |
|---|---|---|---|
| 2007 SEA RAY 220SDT | SERV28121607 | | |
| MERCURY 350MAG MPIA (300 PHP) MCM STERN DRIVE | | OW662295 | |
| 2007 TRAIL-RITE 220SD BT | 1T0BS17D97S155986 | | |

Description of Other Collateral (Not household goods)

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Goods purchased and any other collateral described above, and all accessions, attachments, accessories, and equipment placed in or on the Goods or other collateral, together called Property, and proceeds of the Property You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 53695.93 , plus finance charges accruing on the unpaid balance at the rate of 8.50 % per year from today's date until paid in full Finance charges accrue on a 365 day basis You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ N/A if you pay this Contract in full before we have earned that much in finance charges

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED

**TRADE-IN:** The property traded in is:

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you | AMOUNT FINANCED The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $9000.00 |
|---|---|---|---|---|
| 8.50 % | $ 58141.67 | $ 53695.93 | $ 111837.60 | $ 120837.60 |

Payment Schedule: Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning |
|---|---|---|
| 240 | 465.99 | MONTHLY BEGINNING: 9-26-2007 |

**Security:** You are giving a security interest in the Goods purchased with this Contract until paid in full

**Late Charge:** If a payment is more than 10 days late, you will be charged $10
**Prepayment:** If you pay off this Contract early, you will not have to pay a Minimum Finance Charge
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium If you want such insurance, we will obtain it for you (if you qualify for coverage) We are quoting below ONLY the coverages you have chosen to purchase

Credit Life: Insured ___
☐ Single ☐ Joint Premium $ N/A Term ___
Credit Disability: Insured ___
☐ Single ☐ Joint Premium $ N/A Term ___

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered

_____  d/o/b  _____  d/o/b
Buyer                        Buyer

**PROPERTY INSURANCE:** You must insure the Property securing this Contract You may purchase or provide the insurance through any insurance company reasonably acceptable to us The deductible amount of this insurance may not exceed $ N/A .
If you get insurance from or through us you will pay $ N/A for ___ of coverage
This premium is calculated as follows
☐ Fire-Theft and Combined Additional Coverage $ N/A
☐ ___  $ N/A
☐ ___  $ N/A

☒ **SERVICE CONTRACT:** With your purchase of the Goods, you agree to purchase a Service Contract to cover ___
2007 SEA RAY 220SDT
SERV28121607 This Service
Contract will be in effect for 72 MONTHS

**ASSIGNMENT:** By signing below, the Seller/Creditor accepts this Contract and for value received transfers and assigns all of its right, title, and interest in this Contract and the Property to Assignee selected below This transfer is made pursuant to and is subject to a separate Agreement between Seller and Assignee by which Assignee has agreed to accept the transfer and assignment of contracts from Seller

ASSIGNEE NEWPORT BOATS
☐ GE Money Bank, c/o 332 Minnesota Street, St Paul, MN 55101,
☐ GEMB Lending Inc., c/o 3355 Michelson Dr., Second Floor, Irvine, CA 92612.

Seller By _____  Date 8-26-07

**ITEMIZATION OF THE AMOUNT FINANCED**

Goods and/or Services Price
(not including taxes) $ 55090.00
Service Contract (not including taxes) paid to LIB $ 2995.00
Taxes on the above goods and services $ 4544.93
Amount to Finance negative equity on trade-in $ N/A
1. Total Cash Price (total of the above) $ 62629.93
Paid to Public Officials - Filing Fees Only $ N/A
Paid to Public Officials - Other than Filing Fees $ 66.00
Insurance Premiums* $ N/A
, Paid to ___ $ N/A
$ N/A
2. Subtotal (line 1 plus official fees and insurance) $ 62695.93
Trade-In Allowance $ N/A
Less Amount Owing $ N/A
To ___
3 Net Trade-In $ N/A
4. Deferred Down Payment $ N/A
5 Manufacturer's Rebate $ N/A
6 Cash Down Payment $ 9000.00
7. Total Down Payment (lines 3, 4, 5, and 6) $ 9000.00
(disclose as $0 if negative)
8. Unpaid Balance (line 2 minus line 7) $ 53695.93
9. Prepaid Finance Charges $ N/A
10. Amount Financed (line 8 minus line 9) $ 53695.93
*We may retain or receive a portion of this amount

**ABOUT YOUR ANNUAL PERCENTAGE RATE OF FINANCE CHARGE:** The Seller may set the Annual Percentage Rate: You and the Seller may negotiate the Annual Percentage Rate. The Seller may retain the right to receive a portion of the Finance Charge if the Seller assigns this Contract.

**NOTICE TO BUYER:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you desire to pay off in advance the full amount due, the amount which is outstanding will be furnished upon request.

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT:

Buyer Signature _____ 8-26-07
MANUEL R. LENA

Signature _____ Date

Seller By _____

EXHIBIT B
PAGE 5 OF 12

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have agreed to purchase the Goods and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Goods.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our first priority status.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to perform any obligation that you have undertaken in this Contract (which includes doing something you have agreed not to do).
B. You become a debtor in any bankruptcy proceeding, or others take legal action to collect money or repossess property from you.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract.

You also agree to pay our actual and reasonable costs of collection occasioned by removal of the goods from the state without our written permission, your failure to notify us of any change of residence, or your failure to communicate with us for a period of 45 days after any default in making payments due under this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract.
A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
E. We may, instead of repossessing the goods, pursue a judgment against you for the amount due under this Contract.

Except to the extent limited by law, by choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

In the event we repossess the goods, we must give you notice of your right to redeem, and notice of either a public sale of the goods or of our intention to keep the goods, as the case may be. Notice will be in a manner prescribed by Cal Civ Code § 1812.2 et seq.

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above

If travel purchased credit disability insurance in connection with this Contract, the following claim procedures apply.

**CLAIM PROCEDURE**

If you become disabled, tell us (your creditor) right away. (We advise you to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us at the location where we would like to be notified.) We will tell you where to get claim forms. Send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payments, **WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER** your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within three calendar months or accepts the claim within the three calendar months as a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given

**RETURNED CHECK CHARGE:** If you make any payment required by this Contract with a check or negotiable order of withdrawal or share draft that is returned dishonored, we may charge and collect a fee of not more than $15.00 for such an item

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**ARBITRATION. Please read this carefully.** Subject to the exceptions discussed below, any legal dispute or claim of any kind that relates in any way to your credit application, this Contract or your relationship with us or any assignee of this Contract will be resolved by binding arbitration if either you or we elect to arbitrate. The following describes the arbitration procedure, and its implications

- If either of us elects to arbitrate, you or we must notify the other parties. You must do this by sending notice to Legal Operations, 332 Minnesota St, Suite 600, St. Paul, MN 55101. Notice can be given after a lawsuit has been filed, in which case it can be made in papers in the lawsuit
- The person who starts the arbitration proceeding must choose an administrator, which can be either the National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, or the American Arbitration Association, 335 Madison Avenue, New York, NY 10017. The actual arbitrator will be selected under the administrator's rules, and must be a lawyer with at least ten years of experience
- The arbitrator must follow the applicable law as if this matter had been brought in court as long as it is consistent with the Federal Arbitration Act, 9 U S C §§1 et seq ("FAA"), this arbitration provision and the Administrator's rules. The arbitrator is authorized to award any and all remedies that would apply if the action were in a court (including, without limitation, punitive damages, which shall be governed by the constitutional standards employed by the U S Supreme Court).
- The arbitration will take place in a location reasonably convenient to you. If you ask us, we will pay all filing, administrative, hearing and/or other fees the Administrator or arbitrator charges up to $2,500. If the cost is higher, you can ask us to pay more and we will consider your request in good faith. Under all circumstances we will pay all amounts we are required to pay under applicable law
- These terms involve interstate commerce and this arbitration provision is governed by the FAA
- A court may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding except for (1) any appeal right under the FAA; and (2) any party may appeal decisions relating to claims of more than $100,000 to a three-arbitrator panel appointed by the Administrator, which will reconsider any aspect of the appealed award. If you appeal, we will consider in good faith a request by you for us to pay any or all additional fees imposed by the Administrator or arbitrator

**IMPORTANT LIMITATIONS AND RESTRICTIONS:** If a claim goes to arbitration, neither of us will have the right to: (1) have a court or a jury decide the claim; (2) engage in discovery (i.e., the right to obtain information from the other party) to the same extent that you or we could in court; (3) participate in a class action in court or in arbitration, either as a class representative or a class member; (4) act as a private attorney general in court or in arbitration; or (5) join or consolidate your claim(s) with claims of any other person. The right to appeal is more limited in arbitration than in court. Other rights that you would have if you went to court may also not be available in arbitration. Only a court may determine the validity and effect of the parts 3, 4 and 5 of this paragraph. If a court should hold such part(s) to be invalid, then the entire provision shall be null and void. However, this will not limit the right to appeal such holding.

**Exceptions to this Provision:** This provision is subject to two exceptions. (1) certain claims are excluded, and (2) you may reject this provision in its entirety in which case no claims are subject to arbitration

**Claims Not Subject to Arbitration:** The following claims are excluded from this provision (1) claims brought in a small claims court or its equivalent, unless that claim is transferred, removed, or appealed to a different court; and (2) claims seeking to enforce our security interest in the Property secured by this Contract. The institution and maintenance of any action in court shall not constitute a waiver of the right of any party to compel arbitration regarding any other claim subject to arbitration, including the filing of a counterclaim in a suit brought by us

**Right to Reject Arbitration:** You may reject this arbitration provision, in which event neither you nor we will have the right to require arbitration. Rejection will not affect any other aspect of these terms. To reject the arbitration provision, you must send us a notice that we receive within 60 days after you opened your account. The notice must include your name, address, and account number and be mailed to Arbitration Opt Out, P O Box 981429, El Paso, TX 79998-1429. In the event of any dispute concerning whether you have provided a timely notice, you must provide a signed receipt. This is the only method you can use to reject the arbitration provision. If the notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the notice on your behalf.

EXHIBIT B
PAGE 6 OF 12

## STATE OF CALIFORNIA
### CERTIFICATE OF TITLE

TRAILER

VEHICLE ID NUMBER: 1T0BS17D97S155986
YR MODEL: 2007
MAKE: TRAIL

BODY TYPE MODEL: CARRIER
UNLADEN AX WEIGHT: 2 01100
FUEL: D
TRANSFER DATE:
FEES PAID: $37
REGISTRATION EXPIRATION DATE: PERM

YR 1ST SOLD: 2007
CLASS: BH
*YR MO: NW
EQUIPMT/TRUST NUMBER:
ISSUE DATE: 09/23/07

MOTORCYCLE ENGINE NUMBER:
ODOMETER DATE:
ODOMETER READING:

REGISTERED OWNER(S)
LIMA MANUEL R
21550 CHATSWORTH ST
CHATSWORTH CA 91311

I certify under penalty of perjury under the laws of the State of California, that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ DATE    X _____ SIGNATURE OF REGISTERED OWNER
1b. _____ DATE    X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [    ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING  ☐ Odometer reading is not the actual mileage.  ☐ Mileage exceeds the odometer mechanical limits.

*I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

DATE    TRANSFEROR/SELLER SIGNATURE(S)  X RC
DATE    TRANSFEREE/BUYER SIGNATURE(S)  X

PRINTED NAME OF AGENT SIGNING FOR A COMPANY: CANZU  **GEMB LENDING**

**IMPORTANT READ CAREFULLY**
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)
GEMB LENDING INC
PO BOX 64004
ST PAUL
MN 55164

2. X RC   **GEMB LENDING**
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

PAGE 7 OF 12

# BILL OF SALE AND

## ASSIGNMENT AND ASSUMPTION AGREEMENT

BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Bill of Sale**"), dated as of January 5, 2011, among (i) GE Money Bank, a Federal savings association ("**GE Money**"), GEMB Lending, Inc., a Delaware corporation ("**GEMBL**"), Monogram Credit Services, LLC (together with GE Money and GEMBL each, a "**Seller**" and collectively, the "**Sellers**") and (ii) Sovereign Bank, a Federal savings bank ("**Buyer**").

### W I T N E S S E T H :

WHEREAS, Buyer and Sellers have concurrently herewith consummated the purchase by Buyer of the Sovereign Purchased Assets pursuant to the terms and conditions of the Asset Purchase Agreement dated December 30, 2010 among Buyer, Santander Consumer USA Inc. and Sellers, (the "**Asset Purchase Agreement**"; terms defined in the Asset Purchase Agreement and not otherwise defined herein being used herein as therein defined); and

WHEREAS, pursuant to the Asset Purchase Agreement, Buyer has agreed to assume certain liabilities and obligations of Sellers with respect to the Sovereign Purchased Assets.

NOW, THEREFORE, in consideration of the sale of the Sovereign Purchased Assets and in accordance with the terms of the Asset Purchase Agreement, Buyer and Sellers agree as follows:

1. Each Seller does hereby sell, transfer, assign and deliver to Buyer, effective as of the Closing Date, all of its right, title and interest in, to and under the Sovereign Purchased Assets sold by such Seller pursuant to the Asset Purchase Agreement.

2. Effective as of the Closing Date,(a) Buyer does hereby accept all the right, title and interest of the Sellers in, to and under all of the Sovereign Purchased Assets, and (b) Buyer assumes and agrees to pay, perform and discharge promptly and fully when due all of the Sovereign Assumed Liabilities.

3. Each Seller hereby covenants that, from time to time after delivery of this Bill of Sale, at the reasonable request of Buyer and without further consideration, such Seller shall do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, any and all such further reasonable acts, instruments, conveyances, endorsements and other things or writings reasonably requested by Buyer in order to evidence and effectuate the conveyance of the Sovereign Purchased Assets. Additionally, each Seller hereby irrevocably constitutes and appoints Buyer and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Seller or in

Buyer's own name, to execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, any and all such further instruments, conveyances, endorsements, and other things or writings reasonably required by Buyer in order to (a) perfect an enforceable first-priority security interest in or evidence the transfer of title to the vehicles comprising collateral for the Sovereign Transferred Receivables, and (b) protect, preserve, or realize upon the Sovereign Purchased Assets and Buyer's security interest therein.

       4.      Nothing contained in this Bill of Sale diminishes or affects any statements, certifications, representations, warranties, covenants, agreements or indemnifications by Buyer, Santander Consumer USA Inc. or Sellers, each of which shall survive the delivery of this Bill of Sale in accordance with the terms of the Asset Purchase Agreement, and none of which have merged into this Bill of Sale. This Bill of Sale does not create any independent rights or remedies other than those specifically set forth in the Asset Purchase Agreement.

       5.      This Bill of Sale shall be governed by and construed in accordance with the law of the State of New York, without regard to the conflicts of law rules of such state.

       6.      This Bill of Sale may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

       [Signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Bill of Sale to be duly executed as of the day and year first above written.

GE MONEY BANK

By: _____
Name: Glenn P Marino
Title:


GEMB LENDING, INC.

By: _____
Name:
Title:


MONOGRAM CREDIT SERVICES, LLC

By: _____
Name: Glenn P Marino
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Bill of Sale to be duly executed as of the day and year first above written.

GE MONEY BANK

By: _____
    Name:
    Title:

GEMB LENDING, INC.

By: *Thomas Patton*
    Name: THOMAS PATTON
    Title: PRESIDENT

MONOGRAM CREDIT SERVICES, LLC

By: _____
    Name:
    Title:

SOVEREIGN BANK

By: _____
Name: **Nuno Matos**
Title: **Managing Director of Retail Business Development and SME Banking**

EXHIBIT B
PAGE 12 OF 12